Joseph ACAVINO and Patricia Acavino

v.

Policeman Robert DAISS and City of Philadelphia.

Civ. A. No. 81–3338.

United States District Court, E.D. Pennsylvania.

Jan. 31, 1983.

Neil E. Jokelson, Jokelson & Rosen, Philadelphia, Pa., for plaintiffs.

Gerald T. Clark, Asst. City Sol., Law Dept., Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

In this civil rights action, plaintiffs allege that defendant Daiss, a Philadelphia police officer, conducted an unconstitutional search of their home pursuant to a warrant that plaintiffs contend was based on allegations Daiss knew or had reason to know were false and uncorroborated. The warrant issued on the basis of an affidavit of Officer Daiss that he had received information he believed to be reliable from a confidential informant suggesting that sales of narcotics were taking place inside plaintiffs' house. Plaintiffs have been seeking to compel disclosure of the informant's identity and residence.

i.

On April 8, 1982, I ordered defendants to submit for *in camera* examination an affidavit by the informant reciting, *inter alia,* the informant's identity and the circumstances of the informant's contact(s) with Officer Daiss concerning the search warrant. In response, defendants submitted Officer Daiss's affidavit; it provided only some of the information requested in the April 8 Order. Outlining the threats such disclosure would pose to him and to the informant, Officer Daiss refused to disclose the informant's identity. He also contended that disclosure would hobble his ability to serve as an effective narcotics investigator.

In a Memorandum of May 13, 1982, I discussed the reasons defendants had given

for their failure to comply with the April 8 Order. In that Memorandum I sought to establish procedures that would enable discovery to move forward while ensuring that the informant's identity would not be disclosed without good cause. First, I ordered defendants to turn over the Daiss affidavit to plaintiffs' counsel. Second, defendants were given the option of either (a) submitting to the court for *in camera* examination a further affidavit disclosing the informant's identity or (b) submitting to the court an affidavit from the Commissioner of the Philadelphia Police Department reciting that an affidavit setting forth the informant's identity had been filed with him.[1] Third, defendants were ordered to file for *in camera* review an affidavit reciting with specificity the threats that non-*in camera* disclosure would pose to the informant.[2] Finally, in declining to compel disclosure of the informant's identity to the plaintiffs, I explained that before I would consider such an order, I would "require plaintiffs to make a more concrete and substantial showing .of need for disclosure which goes beyond the conclusory allegations that the informant's statements were false and uncorroborated...." *Acavino v. Daiss*, No. 81-3338, slip op. at 4 (E.D.Pa. May 13, 1982). The reason was that "[w]ithout such a preliminary showing, it would be difficult to assess whether plaintiffs' interest in deposing the informant outweighs the government's substantial interest in protecting confidential sources of information." *Id.* at 5.

On November 29, 1982, plaintiffs filed a memorandum renewing their request to compel disclosure of the informant's identity. That memorandum fails to meet the requirements outlined above. Accordingly, plaintiffs' motion to compel disclosure of the informant's identity is denied.

### ii.

In the alternative, and without citation of authority, plaintiffs seek certifica-

tion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The statute requires that a certified question involve "a controlling question of law as to which there is substantial ground for difference of opinion and ... [from which] an immediate appeal ... may materially advance the ultimate termination of the litigation...." In addition, the Third Circuit has limited the use of section 1292(b) to those "exceptional cases where an intermediate appeal may avoid protracted and expensive litigation...." *Milbert v. Bison Laboratories, Inc.*, 260 F.2d 431, 433 (3d Cir.1958). *See Mattioni, Mattioni & Mattioni, Ltd. v. Ecological Shipping Corp.*, 530 F.Supp. 910, 917 (E.D.Pa. 1981); *Mazzella v. Stineman*, 472 F.Supp. 432, 436 (E.D.Pa.1979). Section 1292(b) is "not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Milbert*, 260 F.2d at 433. In my judgment, my denial of plaintiffs' motion to compel does not fall within that very small sub-set of interlocutory orders properly certifiable under section 1292(b) as interpreted in this Circuit.

### iii.

As a third option, plaintiffs have asked me to renew my Order of April 8, 1982—an Order superseded *pro tanto* by my Memorandum and accompanying Order of May 13, 1982. Plaintiffs view as crucial to this lawsuit their theories that either no informant exists or that the recitals of fact in Officer Daiss' affidavit in support of the warrant differ from what the informant actually told Officer Daiss. They therefore argue that to prevent them from learning what the informant told Daiss and how that meshes with what Daiss stated in the affidavit in effect resolves all credibility issues in favor of defendants prior to trial.

As I noted in my May 13 Memorandum, the April 8 Order sought to strike a balance between the governmental interest in pro-

---

1. Defendants chose option (a): on June 8, 1982 the informant's identity was disclosed to the court.

2. On June 8, 1982, defendants submitted affidavits from law enforcement officials other than Officer Daiss describing the dangers of non-*in camera* disclosure.

tecting confidential sources and the plaintiffs' interest in discovering all information necessary to prosecute their case. The affidavits submitted in response to the April 8 and May 13 Orders raise serious and troubling questions about the hazards of disclosing the identity of Government informants.

I am mindful of these questions. The Memorandum of May 13 sought to devise a process for addressing these questions while enabling discovery to move forward. This effort was stymied, however, because, as noted above, plaintiffs did not undertake a showing "which goes beyond the conclusory allegations that the informant's statements were false and uncorroborated."

Arguably, no additional judicial intervention in aid of plaintiffs' discovery is called for in view of plaintiffs' failure or inability to undertake the showing called for in the May 13 Memorandum. But, on reflection, I am persuaded that one further effort is appropriate—an effort keyed to the Third Circuit's recognition of "the value of *in camera* testimony as a method of protecting the identity of a government informant while permitting an evaluation of the importance of his testimony." *United States v. Cortese,* 614 F.2d 914, 921 (3d Cir.1980). In *United States v. Jackson,* 384 F.2d 825, 827 (3d Cir.1967), *cert. denied,* 392 U.S. 932, 88 S.Ct. 2292, 20 L.Ed.2d 1390 (1968), the court approved the district court's *in camera* examination of an informant who testified under oath concerning his knowledge of the alleged crime. The court noted that the "advantage of the procedure is that it enables the court to view with a keener perspective the factual circumstances upon which it must rule and attaches to the court's ruling a more abiding sense of fairness than could otherwise have been realized." *Cf. Black v. Sheraton Corporation,* 564 F.2d 550, 553 (D.C.Cir.1977) (approving district court's *in camera* examination of FBI documents to determine the existence and scope of the informer's privilege).

I am persuaded by these authorities that the proper procedure now is for me to conduct an *in camera* examination of the informant. After this examination, I will be in a better position to balance the governmental and private interests at stake in this case. Accordingly, at a date in the near future, I will conduct such an examination. I will question the informant about the subjects outlined in my April 8 Order; in addition, I will ask about the dangers that disclosure of the informant's identity might pose. Defense counsel may be present at the *in camera* examination and may question the informant.

## ORDER

For the reasons set forth in the accompanying memorandum, it is hereby ORDERED that

1. Plaintiffs' motion to compel disclosure of the informant's identity is DENIED;

2. Plaintiffs' request that a question be certified to the Court of Appeals pursuant to 28 U.S.C. § 1292(b) is DENIED;

3. Plaintiffs' motion that the Order of April 8, 1982 be renewed is DENIED:

4. At a date to be established by the court, defendants shall produce the informant for an *in camera* examination.